BEATTY, Justice.
This is an appeal from the denial of the appellants’ request for “emergency declaratory and injunctive relief.”
Appellants, Paul Haughton, Bryant Evans, and Neil Buettner, filed suit to prevent implementation by the appellees, W. Hardy McCollum, Doris Turner, and Beasor Walker, of a plan to have election workers indicate on the official list of voters for each ward or precinct the party primary in which the voter participated.
W. Hardy McCollum is the probate judge of Tuscaloosa County, Doris Turner is the circuit clerk, and Beasor Walker is the sheriff. They constitute the board that is required, under Code of 1975, § 17-16-2, to appoint the inspectors and clerks for each voting place and the returning officer for each voting precinct, who must perform their election duties according to law. See § 17-6-10. The facts are not in dispute, and we adopt the statement thereof contained in the trial court’s order:
“The facts in this case revolve around the statutory framework of Alabama election laws and the actions of the Defendants in attempting to carry out their statutory duties thereunder. The facts are largely undisputed.
“Under current Alabama law, when a voter participates in a Presidential Preference Primary Election, the voter must present and identify himself or herself to the election officials at his or her designated polling place. After the official verifies that the voter is listed on the official voting list, the voter must publicly declare in which party’s primary he or she wishes to participate by signing the appropriate party’s polling list. The Democratic party’s polling list is one col- or and the Republican party’s list is another color. An election official then *759 marks the voter’s name on the official voting list to ensure that the person does not attempt to vote more than once in the election. After the election, the polling lists are sealed and forwarded to the respective chairmen of the political parties in each county. The marked copies of the official voting lists are sealed and retained by the Probate Judge of each county. Neither the polling lists nor the official voting lists may be unsealed for any purpose except in the event of an election contest. The polling lists must be destroyed 30 days after the election unless a contest is filed within that time. The Probate Judge retains the sealed voting lists for one year before destroying the lists.
“The controversy in this case centers around the instruction of the appointing board to the election officials to mark on the official voting list the names of those voters participating in the March 8, 1988 Presidential Preference Primary Election using colored markers in a manner that would identify in which party’s primary a voter participated. In uncontroverted testimony in an open hearing, Probate Judge Hardy McCollum, a named Defendant, stated that the sole purpose of such instruction was to aid in the resolution of any contested election by identifying which voters participated in which party’s primary. The coded marking of the voting list requires no disclosure from the voter other than the disclosure of party preference already required by Alabama law.
“The Plaintiffs contend that such coded marking of the voting list in effect creates a separate voting list not specifically authorized by law and that the existence of such list would tend to affect them in a disparate manner because the Plaintiffs belong to a party that is in a numerical minority in Tuscaloosa County. The Plaintiffs alleged that if voters are aware that such coding is being utilized to record who participated in the primary election, they may feel pressured to vote in the majority party’s primary because of peer pressure.
“The Plaintiffs seek (1) a ruling that such marking is contrary to Alabama law and (2) an injunction against the Defendants prohibiting the color coded marking of the voting lists.”
The trial court went on in its order to rule as follows on the matters presented by the complaint filed by appellants:
“Given the facts of the case, the current Alabama voting laws, and the testimony of the witnesses at the hearing, this Court finds that the Plaintiffs failed to meet their burden of proof that they would suffer immediate and irreparable harm absent granting of the relief sought. As to the legality of the Defendants’ instructions to Tuscaloosa County election officials, the Plaintiffs have failed to produce any statutory or judicial precedent to show that the absence of specific statutory authorization for their actions makes those instructions contrary to the statutes governing elections in Alabama. The coding of the voting list by party preference creates no record not already required by the Alabama law requiring voters to declare their party preference by signing a poll list.”
Thus, the substantive issue in the case, as framed at the beginning of the trial court’s order, is:
“[Wjhether or not the board created under Ala. Code § 17-6-1 (1987 repl. vol.) for the purpose of appointing election officials (the appointing board) may legally instruct those officials to mark the names of those voters participating in the March 8, 1988 Presidential Preference Primary Election in a manner that would identify in which political party’s primary election a voter participated. Further, the Plaintiffs ask this Court to enjoin the appointing board from so instructing voting officials.”
Appellants argue that the plan, calling for color coding of the official voting list to indicate in which party’s primary those voting participated, violates Code of 1975, § 17-7-17, which provides as follows:
“Any election officer or any other person who makes a copy of the poll list or *760 any memoranda therefrom, or list of the persons voting, or the number of their ballots, or discloses the number of such voter’s ballot, shall be guilty of a misdemeanor, and upon conviction, shall be fined not less than $200.00.”
This statute, passed by the legislature on October 3, 1903, was first codified in the 1907 Code at § 6806, in the portion of volume 3 entitled “the Criminal Code.” The language of the statute has remained unchanged since that first codification. In Sartain v. Shepherd, 173 Ala. 474, 55 So. 919 (1911), the first decision construing this section, the Court, speaking through Justice Somerville, noted that “Section 6806 of the Criminal Code is, of course, designed to prevent in general the making of copies of poll lists by any person, or for any use or occasion, not authorized by law; and it must be construed in connection with section 458.” (Emphasis added.) 173 Ala. at 478, 55 So. at 921.
We do not equate the procedure used in this case for checking off electors from the official voting list {viz., color-coded checkoffs indicating in which party primary each elector participated) with the sort of duplication of the poll list proscribed by § 17-7-17. First of all, § 17-16-25 provides that, as each voter votes in primary elections, “the name of the voter shall be checked off the official voting list.” Thus, the checkoff procedure is not only authorized but is required by law. Secondly, the color-coded checkoff procedure constitutes neither a “copy of the poll list,” nor a “memorand[um] therefrom.”
Pursuant to § 17-16-4, primary elections are to be conducted in accord with the provisions of Title 17, Chapter 16, dealing with primary elections, as well as “in the same manner and form, under the same requirements [, etc.,] ... as are ... provided by law for the holding of regular state elections.” Furthermore, under § 17-16-14, only qualified electors “who are also members of a political party and entitled to participate in such primary election under the rules of said party shall be entitled to vote therein and shall receive the official primary ballot of that political party, and no other .” (Emphasis added.) This statute further vests in “every governing body of a party ... the right, power and authority to fix and prescribe the political or other qualifications of its own members and shall, in its own way, declare and determine who shall be entitled and qualified to vote in such primary election or to be candidates therein or to otherwise participate in such political parties and primaries.” (Emphasis added.) Pursuant to this statutory authority, the State Democratic Executive Committee established a party rule prohibiting “cross-over” voting. That rule, which, under § 17-16-14 above, has the force and effect of law, is found in Article VII, § 1(e), Rules of the Democratic Party, and it provides as follows:
“Any person who (1) votes in any primary election of another political party, (2) participates in the nominating process of another party's candidates(s), or (3) promotes the candidacy of an independent candidate, shall not be entitled to vote in Primary Elections of the Democratic Party held in the calendar year in which such person does any of said prohibited act(s). Without limiting the foregoing, any person who votes in the first primary election of another political party shall not be entitled to vote in the Democratic Party’s run-off Primary Election which follows such first primary election.” (Emphasis added.)
It is undisputed that, when the legislature authorized a presidential preference primary to be held approximately 90 days prior to the regular primary elections, a void was created with respect to the availability of poll lists in the event of an election contest. See Code of 1975, Chapter 16A of Title 17. The poll lists, provided for in Code of 1975, § 17-16-14, which would identify the voters who participated in each party’s presidential primary, must be destroyed by the chairman of the county executive committee after the time allowed by law for filing a contest to that election. Code of 1975, § 17-16-25. Therefore, if a contest was filed after the regular primary election based upon a violation of the “anti-crossover” rule of the Democratic Party, there would be no record available indicating who voted in which party’s presidential *761 primary. The same kind of void exists where there is a contest of a run-off primary election based on violations of the “anti-crossover” rule. Depending upon the date of the run-off election, the records from the regular primary may also have been destroyed by the time the contest of the run-off election is filed.
Nothing in the election laws of this state prohibits the appellees herein from making this administrative accommodation of the party rules, which by law govern the primary elections held in this state. Furthermore, the election statutes specifically contemplate and provide that the records and information necessary to an election contest will be available during the time for filing such a contest (see §§ 17-16-25 and -30). It is only in the instances described above that a hiatus exists between the express language of the election statutes and the party rules. In effecting the purpose of both, we hold that the plan instituted by the appellees to fill this void is not only consonant with the purpose of the election statutes, but also must be viewed as implicitly authorized thereby. The implementation of the plan under attack is no more than an administrative convenience, and thus attendant to the appellees’ function as election officials charged with the duty of carrying out the letter and spirit of the election laws of this state.
Accordingly, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
JONES, ALMON, SHORES and ADAMS, JJ., concur.
MADDOX, J., concurs specially.
TORBERT, C.J., dissents.